## Case No. 3,361.

### CRAPO v. The ARCTIC.

[N. Y. Times, Aug. 2, 1862.]

District Court, S. D. New York. July, 1862.

SHIPPING—CHARTER PARTY — FREIGHT — LIEN—RES JUDICATA—ADMIRALTY — QUASI REAL ACTIONS—RIGHTS OF INTERVENER.

[1. A carrier's legal and equitable right to freight is not affected by the outcome of a prior suit, instituted by a third party against the consignee after the termination of the voyage, to determine the ownership of the cargo.]

[2. Cargo is not divested of a lien for freight by merely being discharged into a warehouse, and placed with the consignee, without other evidence of the carrier's intention to waive the lien.]

[3. In a suit for freight under a charter party for the carriage of guano, a claim by an intervener that the guano was tortiously taken from soil whereof the legal title was in the intervener is in substance a quasi real action, not triable in admiralty, and does not affect the carrier's lien for freight.]

[4. A clause in a charter party giving the charterer the right to retain freight moneys in case rival claims should be made thereto cannot be set up in opposition to the carrier's lien for freight by an intervener who has obtained possession of the cargo by an action at law against the consignee.]

[In admiralty. Libel by William W. Crapo, assignee of a charter party, against the cargo of the ship Arctic, to recover freight and expenditures under the charter party. The American Guano Company, charterer, makes no defense, and the hearing is now on the intervention of the United States Guano Company.]

Before BETTS, District Judge.

This was an action upon a charter party made between the owners of the ship Arctic and the American Guano Company. The charter provided for a voyage from Honolulu to New York, including an intervening voyage to Howland's island, where she should land cargo, and then receive a cargo of guano, and transport it thence to New York. The parties bound themselves, and also the vessel and the merchandise to be laden on board, to the faithful performance of the contract. The vessel performed her voyage pursuant to the charter, taking on board and delivering cargo at the places specified, after building certain stipulated fixtures preparatory thereto. The libelant is the assignee of the charter party and bill of lading, and seeks to recover the freights and expenditures in erecting moorings and other conveniences for lading, stipulated by the contract. The charterers make no defence, but the United States Guano Company intervene, and allege that the cargo is free of liability under the charter.

The principal grounds of defence are that the guano was unlawfully taken by the ship from soil owned by the claimants in islands in the Pacific ocean; and that, when the cargo arrived in New York, it was discharged from the vessel and the owners of the vessel voluntarily surrendered the possession of the guano to the American Guano Company, and parted with the possession and control without making any claim of lien upon the same for freight or other cause. Before the commencement of the suit the claimants prosecuted their right to the guano as against the American Guano Company, and had possession of the property delivered over to them by due process of law, and they urged that fact in bar of this action.

THE COURT held substantially that the controversy between the American Guano Company and the United States Guano Company, after the termination of the voyage, concerning the possession of the cargo here, its liability to freight, or its real ownership, is res inter alios acta, and in no way affects the legal or equitable rights of the libelant to the freight. That cargo is not necessarily divested of the lien for freight by merely discharging it from the ship into a warehouse, placing it with the consignees, without other evidence denoting that the carrier intended thereby to remove his lien and rely upon the responsibility of the consignees. No satisfactory evidence of such intention was given. That this cargo, although taken from the ground, and composed wholly of soil, was, after being detached, merchandise, and a subject of freight. It was delivered to the ship by agents of the consignees as their property, and would be legally in custody of the ship until taken from that custody by the consignees in fulfillment of the charter, or by claimants establishing a paramount title in law to it. The claimants allege such, and claim that the property has been forcibly and wrongfully taken from their possession by this transportation, and that they are entitled to have the property restored to them, or to hold it exempt from all liability for the freight and carriage of it away from their possession and use. This right set up consists exclusively in the alleged title to the soil itself as land, and not in the cargo as personal property in their positive possession as such. The inherent right of the owner of the land, no doubt, adhered to the guano as part of his estate, and he might maintain his action at law against trespassers for unlawfully depriving him of it. But whether the act of removing it was tortious, depends upon the legal title to the land from which the guano was dug, and that is not a question triable indirectly in the admiralty in a suit upon a charter party. The admiralty cannot take cognizance of quasi real actions.

The clause in the charter party in respect to the right to retain freight moneys in case rival claims should be made therefor is in favor of the American Guano Company, as against the ship, and can only be set up by them or their legal assignees. No privity of interest therein is conferred on the United States Guano Company, nor does any accrue by presumption of law enabling them to enforce or resist that stipulation. The charter

party having provided that, although portions of the entire cargo were to be discharged at different points of the voyage, the whole freight should be payable at the port of final discharge, the cargo then on board was chargeable to the fulfillments of all the agreements in the contract, and although the maritime law gives no right of lien to a ship for outlays made in the erecting of moorings or other conveniences outside the ship, in aid of lading or housing the cargo, yet it does not interdict an owner of the cargo hypothecating the cargo in guarantee of such disbursements, and security may be furnished under a charter agreement as well as by a separate or special pledge. This charter party, by its terms, operates as an express hypothecation of the property for such outlays, in addition to the freight. The libellant is, therefore, entitled to recover, as against the cargo arrested; the amount due upon the charter must have a reference to ascertain the amount.